Richard **ABRAMS,**
Respondent/Employee,

v.

**OHIO PACIFIC EXPRESS,**
Appellant/Employer,

and

**National American Insurance Company,**
Appellant/Insurer.

No. 73730.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1991.

Richard K. Kuntze, Cape Girardeau, for appellants.

Richard G. Steele, Cape Girardeau, for respondent.

HOLSTEIN, Judge.

The employer, Ohio Pacific Express, sought review of an award of a workers' compensation claim. *§ 287.470.*[1] The Labor and Industrial Relations Commission dismissed the application for review as untimely pursuant to § 287.480. An appeal was taken to the Missouri Court of Appeals, Eastern District. *§ 287.495.* This Court granted transfer after opinion. *Mo. Const. art. V, § 10; Rule 83.03.* The Commission's order of dismissal is reversed.

A "Temporary or Partial Award" was entered by the administrative law judge finding claimant Richard Abrams was an employee of the Ohio Pacific Express, claimant was injured by an accident arising out of and in the course of his employment, and claimant suffered total disability from participating in the labor market. The only issues left for future determination were whether future medical aid would be required and whether the claimant might be restored to regular work. The award was made on April 5, 1990.

An application for review dated April 25, 1990, was mailed to the Division of Workers' Compensation. Postage had been placed on the envelope by a postage meter. The date imprinted by the postage meter was April 25, 1990. The application was delivered on April 26, 1990.

The Labor and Industrial Relations Commission dismissed the application because it was filed more than twenty days after the administrative law judge's award.

In relevant part, § 287.480 provides:

Any notice of appeal, application or other paper required under this law to be filed with the division or commission shall, when mailed to and received by the division or the commission, be deemed to be filed as of the date endorsed by the United States post office on the envelope or container in which such paper is received.

The issue presented on appeal is whether the date made by the postage meter is to be considered "the date endorsed by the United States post office on the envelope."

1. All references to statutes are to RSMo 1986 unless otherwise stated.

Congress has authorized the postal service to adopt regulations, as necessary, to accomplish the objectives given by statute. *39 U.S.C. § 401(2) (1988)*. The regulations pertinent here are found in the *Domestic Mail Manual* (DMM), which is made part of the Code of Federal Regulations. *39 C.F.R., § 111.1 (1990)*. The DMM authorizes postal customers to apply for a license to possess and use postage meters. DMM 144.14 and 144.21. The license is to be revoked if a meter is used unlawfully. DMM 144.231. The date inscribed by the meter is required to be the actual date of deposit of the mail (or the next scheduled collection day). DMM 144.471. Postmarking or cancelling of metered mail is prohibited unless the date is inaccurate. DMM 144.532. Metered mail must be examined by a postal employee for accurate dating. DMM 144.534.

From the above review of the regulations it is apparent that postal authorities license and regulate the use of postage meters and require accurate dating of metered mail. The regulatory scheme provides for routine inspection of the date on metered mail by postal employees to ensure accuracy of the date before that mail is delivered to the addressee. Those who abuse a postage meter license are subject to sanctions.

 The claimant discounts the regulations, arguing that this Court should adopt a narrow construction requiring a postmark date by a postal employee after the envelope is delivered to the post office. The primary role of courts in construing statutes is to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent. *Trailiner Corp. v. Director of Revenue*, 783 S.W.2d 917, 920 (Mo. banc 1990). In determining legislative intent, statutory words and phrases are taken in their ordinary and usual sense. *§ 1.090*. That meaning is generally derived from the dictionary. *Indian Lake Property Owners Ass'n, Inc. v. Director of Revenue*, 813 S.W.2d 305, 308 (Mo. banc 1991). There is no room for construction where words are plain and admit to but one meaning. *State ex rel. Missouri State Board of Registra-*

*tion for the Healing Arts v. Southworth*, 704 S.W.2d 219, 224 (Mo. banc 1986). Where no ambiguity exists, there is no need to resort to rules of construction.

The verb "endorse" is variously defined as:

> ... [T]o write on the back of ... to sign one's name as payee ... to register payments and interest ... to inscribe (one's signature) ... SIGN ... to inscribe (as an official document) with a title, direction, memorandum, or explanation ... to make over to another ... to acknowledge receipt ... *obs.:* To load upon the back ... to express definite approval or acceptance of ... support or aid explicitly by or as if by signed statement: vouch for: UNDERWRITE ... *SYN* See APPROVE....

*Webster's Third New International Dictionary*, 749 (1966).

From the above it is apparent that "endorsed" has multiple meanings. In the context of § 287.480, it possibly means the date inscribed on the envelope by an employee of the post office. It may also mean any date inscribed on the envelope that is approved and authorized by the United States post office as the date the letter was received by the post office, regardless of who caused the mark to appear on the envelope. Whether "endorsed" means "approved" or some more restrictive term is not readily apparent. Well within the range of legislative intent is a date inscribed on an envelope by a licensed postage meter, which is thereafter examined for accuracy by a postal employee and finally delivered to the addressee. The ambiguity in the statute requires resort to the rules of statutory construction.

 The dissent suggests that by resort to strict rules of grammar regarding placement or absence of commas, the Court may resolve all ambiguity. As convenient as that rule of construction may seem, it is not the primary rule of construction, as suggested by the dissent. Courts in this state are reluctant to construe the intent of the legislature based solely on punctuation and grammatical construction. *Application of Graham*, 239 Mo.App. 1036, 199

S.W.2d 68, 75 (1946). *See also Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 830 (Mo. banc 1990).

 Section 287.480 is the initial step in an appeal of an award of a workers' compensation claim. Statutes that are remedial in nature are to be liberally construed so as to effect their beneficial purpose. *State ex rel. LeFevre v. Stubbs,* 642 S.W.2d 103, 106 (Mo. banc 1982). From the earliest cases involving workers' compensation, the right to appeal was recognized as wholly remedial. *De May v. Liberty Foundry Co., et al.,* 327 Mo. 495, 37 S.W.2d 640, 653 (1931). Cases should be heard and decided on their merits. To that end, statutes and rules relating to appeals, being remedial, are to be construed liberally in favor of allowing appeals to proceed. *Sherrill v. Wilson,* 653 S.W.2d 661, 663 (Mo. banc 1983). The statute here must be construed liberally to permit a disposition of this case on the merits, rather than on technical grounds.

An equally compelling rule of construction requires the Court to presume that the legislature did not intend to enact an absurd law and favors a construction that avoids unjust or unreasonable results. *State ex rel. McNary v. Hais,* 670 S.W.2d 494, 495 (Mo. banc 1984). If the Court accepts claimant's interpretation of the statute, situations would arise where two notices might be mailed at the same time, both properly addressed and with proper postage affixed, one by postage stamps and the other by postage meter. Both envelopes would be duly processed and delivered at the same time. Because the postal regulations prohibit postmarking properly dated metered mail, the notice with postage affixed by a postage meter would be ineffective under the narrow construction suggested. Absent unambiguous language to the contrary, such an absurd, unjust and unreasonable result will not be countenanced.

Claimant relies primarily on two cases, *Penn Valley Management, Inc. v. Robertson,* 724 S.W.2d 661 (Mo.App.1987), and *Patterson v. St. Louis Univ. Hosp.,* 780

S.W.2d 106 (Mo.App.1989). Of the two, only *Penn Valley* involved metered mail. In *Penn Valley* the envelope in which the notice of application for review was delivered was dated by a postage meter on September 9, 1985, which was within the time permitted for application for review. However, the envelope was delivered on September 13, 1985, which fell outside the twenty-day statutory limit. The court in *Penn Valley* noted the "custom and practice" of the post office not to postmark metered mail, but failed to consider the effect of the postal regulations discussed above. 724 S.W.2d at 662.

In *Patterson* the notice of application for review was sent by Federal Express prior to the expiration of the twenty-day period but delivered after the twenty-day period expired. 780 S.W.2d at 107. *Patterson* did not involve an envelope sent through the United States mail. Thus, both *Penn Valley* and *Patterson* are distinguishable.

More important than these distinctions, however, is a misstatement of the law found in both cases. One of the major premises relied on in *Penn Valley* was the application of a rule of strict construction to § 287.480. Applying that rule, the court construed "the date endorsed by the" post office to mean only a postmark made after the envelope has been deposited in the mail. 724 S.W.2d at 663. *Patterson* reiterated that the statute in question was subject to "literal and strict construction." 780 S.W.2d at 108. Both cases relied on *Tabb v. McGinley,* 313 S.W.2d 745 (Mo. App.1958), for that statement of the law. That reliance is misplaced.

*Tabb* involved a construction of § 287.-480 prior to the 1974 amendment. The 1974 amendment allowed for proof of filing notice by the date endorsed by the post office. Prior to 1974 the statute required an application be "made to the Commission within ten days from the date of the award." *§ 287.480, RSMo 1949.* The *Tabb* court did not state that the statute was subject to a rule of "literal and strict construction." Instead, the court concluded that § 287.480, RSMo 1949, was plain and unambiguous and therefore, not subject to

the normal rule of liberal construction. *Tabb,* 313 S.W.2d at 748.

An accurate statement of the rule to be applied in construing any ambiguity in § 287.480 is found in *Graves v. O.F. Elliott, Inc.,* 355 Mo. 751, 197 S.W.2d 977 (banc 1946). There a question existed as to whether the contents of a notice of appeal in a workers' compensation case were sufficient. This Court said:

> Since the statute does not say what shall be stated in the notice, surely any language that can reasonably be construed to show that appellant is in good faith attempting to appeal from the final award in the case ought to be held sufficient.... *[A]ll of the provisions of the Compensation Act shall be liberally construed;* that substantial compliance shall be sufficient; and that omissions of a technical nature shall not be fatal.

197 S.W.2d at 979 (emphasis added). *See also § 287.800.*

From what has been said, it is clear that to the extent *Penn Valley* and *Patterson* misstate the law by adopting a rule of "strict construction," they are inconsistent with the prior holdings of this Court. To that extent, they are overruled.

■ The liberal rule of construction is not inconsistent with the concept stated in some cases that because the time limits of § 287.480 are jurisdictional, "strict compliance" with those time limits is required. *See, e.g., Long v. City of Hannibal,* 670 S.W.2d 567, 569 (Mo.App.1984). The requirement of strict compliance with the time limits is not a rule of statutory construction. Strict compliance is required only after ambiguities in the statute are resolved.

It has been suggested that by accepting proof of filing based upon the date made *by a postage meter under the control of* one of the parties, uncertainty as to the actual date of mailing will result because a negligent or deceitful postal employee may not examine the date and ensure that it is correct. That argument assumes that postal meter licensees and postal employees will not comply with the regulations. The argument is contrary to the usual presumption that "[p]ublic officials have rightfully and lawfully discharged their official duties until the contrary appears." *Midwest Materials Co. v. Village Dev. Co.,* 806 S.W.2d 477, 484 (Mo.App.1991), citing *Dittmeier v. Missouri Real Estate Comm'n,* 316 S.W.2d 1, 5 (Mo. banc 1958). Even if this Court adopts the view that only postmarks made by postal employees are sufficient, that narrow construction would not prevent the backdating of a postmark by a negligent or deceitful postal worker. Here there is no evidence suggesting deceit or neglect occurred, and the presumption noted above is applicable.

The dissent suggests that a person with a postage meter may use the prior day's date if the letter is deposited before the first collection of the day. That is not entirely accurate. The regulations clearly require that the date inscribed on the letter must be the date mailed or, if deposited after the last daily collection, the *next* scheduled collection date. It is possible that an unscrupulous person could place a notice in a mail depository sometime after midnight and the post office would accept the prior day's date when it makes its first collection the next morning. At most, the unscrupulous person would gain a few hours advantage over those who have no access to postage meters. The alternative is to punish the great number who use postage meters by saying the date on the envelope, though accurate in all respects and accepted as accurate and approved by postal authorities, may not be considered in determining if a document was mailed on time. On balance, the disadvantage of a few hours to those not having access to postage meters is small. At worst, a few workers' compensation cases will be decided on their merits rather on a procedural default. That disadvantage is hardly the stuff of which the French Revolution was made.

Our holding is consistent with the holding of courts in other states. In a factually similar case, the Supreme Court of Ohio reversed the dismissal of an appeal where notice of appeal was dated by a postage meter on the final day allowable, but it was

received by the review board three days later. *Bowman v. Ohio Bureau of Employment Services*, 30 Ohio St.3d 87, 507 N.E.2d 342, 342–43 (1987). The relevant statute allowed mailed notice so long as it was "postmarked" before the appeal period was ended. 507 N.E.2d at 343. Relying on regulations of the Domestic Mail Manual, the court found that "private meter postmarks are 'postmarks', presumptively valid and accurate, for purposes of timely filing of an appeal to the board under the Code." 507 N.E.2d at 344–45. The highest courts of Iowa and West Virginia have reached the same conclusion on similar statutes requiring a "postmark" within the prescribed period. *Severs v. Abrahamson*, 255 Ia. 979, 124 N.W.2d 150 (1963); *Haynes v. Hechler*, 392 S.E.2d 697 (W.Va.1990).

■ The underlying order of the administrative law judge was designated a "Temporary or Partial Award." Only a "final award" is appealable. *§ 287.495.* The only statutory mention of temporary and partial awards is found in § 287.510. Substantial caselaw holds that no statutory authority exists for judicial review of temporary or partial awards made pursuant to § 287.510 and its statutory predecessors. *State ex rel. Faris v. Eversole*, 332 S.W.2d 879 (Mo. banc 1960); *State ex rel. Prescott Laundry Co. v. Mo. Workers' Compensation Comm'n*, 320 Mo. 1156, 10 S.W.2d 916 (banc 1928); *Boatner v. Slusher, Inc.*, 614 S.W.2d 35 (Mo.App.1981); *Melvin v. Harrison Engineering & Construction Co.*, 232 Mo.App. 382, 107 S.W.2d 836 (1937); and *State ex rel. New Amsterdam Casualty Co. v. Richardson*, 227 Mo.App. 1221, 61 S.W.2d 409 (1933). However, more recent authority holds that an award of permanent total disability requiring payments for the remainder of the claimant's lifetime pursuant to § 287.200.2 is a final award for purposes of appeal under § 287.495 even though designated as a temporary or partial award. *Smith v. Ozark Lead Co.*, 741 S.W.2d 802, 808–810 (Mo.App.1987). While not a model of clarity, the award here seems to be an award pursuant to § 287.-200.2 and not an award pursuant to § 287.-510. Based on *Smith*, this Court concludes there is jurisdiction of this appeal although

the order appealed from is designated a temporary or partial award. The use of an award form entitled "Temporary or Partial Award" may have resulted in confusion and contributed to the employer's delay in filing the application for review. It would seem to be preferable for the Division of Workers' Compensation to develop a new form that would not have the misleading effect of implying that the award is not final.

■ For all the reasons above cited, this Court concludes that a date inscribed on an envelope by a licensed postage meter and delivered to the addressee by the United States post office is the date "endorsed by the United States post office on the envelope." In this case that date was within the twenty-day requirement of § 287.480. The order dismissing the application for review is reversed and the cause is ordered remanded to the Labor and Industrial Relations Commission for further proceedings consistent with this opinion.

ROBERTSON, C.J., and RENDLEN, COVINGTON, and BLACKMAR, JJ., concur.

BENTON, J., dissents in separate opinion filed.

HIGGINS, Senior Judge, dissents and concurs in dissenting opinion of BENTON, J.

THOMAS, J., not participating because not a member of the Court when case was submitted.

BENTON, Judge, dissenting.

The principal opinion acts as if the Missouri precedents—admittedly on all fours with this case—are trivial. In fact, the principal opinion is contrary to a long line of cases, to key concepts of Missouri administrative law, and to the rules of statutory construction.

## I. History of "Filing" Rules in Worker's Compensation Cases

Shortly after the enactment of the Worker's Compensation law, the Kansas City

Court of Appeals, in 1931, reviewed the predecessor to § 287.480, and held that an application for review "received" by the commission after the statutory period for appeal may be "refused properly because untimely." *Waring v. Metropolitan Life Ins. Co.*, 39 S.W.2d 418, 422 (Mo.App.1931). Also in 1931, the St. Louis Court of Appeals held that "an application for a rehearing within the time fixed by statute and a final award thereon by the commission, is necessary and a prerequisite to a right to appeal to the circuit court." *State ex rel. Kenney v. Missouri Workmen's Comp. Comm'n*, 40 S.W.2d 503, 505 (Mo.App. 1931).

Against this background, in 1958, the St. Louis Court of Appeals held that mailing the appeal on the deadline day—with receipt on the next day—did not give the commission jurisdiction to review the appeal. *Tabb v. McGinley*, 313 S.W.2d 745, 746–48 (Mo.App.1958). The *Tabb* case relied on an analogous administrative law decision by this Court, *State ex rel. Alton Ry. Co. v. Public Service Comm'n*, 155 S.W.2d 149, 154 (Mo.1941). In 1968, the St. Louis Court of Appeals held that, where the envelope was "postmarked" within the statutory period, but received after the statutory period, the commission had no jurisdiction. *Hoelscher v. Sel–Mor Garment Co.*, 430 S.W.2d 745, 746–48 (Mo.App. 1968).

In 1974, the General Assembly enacted the second sentence of § 287.480: "Any notice of appeal, application or other paper required under this law to be filed with the division or the commission shall, when mailed to and received by the division or the commission, be deemed to be filed as of the date endorsed by the United States Post Office on the envelope or container in which such paper is received."

The key to the principal opinion is that the Worker's Compensation Act shall be liberally construed. (Maj. op. at 341–342). This liberal rule of construction, however, means that questions of *jurisdiction* shall be resolved in favor of the commission: "However, the provisions of the Worker's Compensation statute are to be liberally construed with a view to the public welfare, § 287.800, RSMo 1969, so that where a question of jurisdiction is in doubt it should be held to be in favor of the commission." *Ringeisen v. Insulation Services, Inc.*, 539 S.W.2d 621, 625–26 (Mo.App. 1976). See also *Patterson v. St. Louis University Hospital*, 780 S.W.2d 106, 108 (Mo.App.1989); *Knuckles v. Apex Industries, Inc.*, 762 S.W.2d 542, 543 (Mo.App. 1988).

The principal opinion errs in applying the standard for the *content* of a notice of appeal to the jurisdictional *timeliness* of a notice of appeal. *See Graves v. O.F. Elliott, Inc.*, 197 S.W.2d 977, 979 (Mo. banc 1946): "We hold that the only jurisdictional requirement for such an appeal is the timely filing of a notice of appeal which fairly shows that the appellant desires to appeal from the final award in his case...."

It is clear that the 1974 amendment changed the date on which an appeal is deemed filed from the date of receipt to the date postmarked. *Long v. City of Hannibal*, 670 S.W.2d 567, 569 (Mo.App.1984). In view of this history, the Court of Appeals, Western District in *Penn Valley Management Inc. v. Robertson*, 724 S.W.2d 661 (Mo.App.1987), consistently and logically held that a private postage meter imprint is not an endorsement on the envelope of the mailing date by the post office.

In sum, the court of appeals has consistently interpreted the phrase "endorsed by the United States Post Office on the envelope or container in which such papers are received" as meaning a postmark. See *Penn Valley*, 724 S.W.2d at 663–64; *Patterson*, 780 S.W.2d at 108. The commission, as apparent from this case, has applied this rule consistently—and equally to employers and employees. The principal opinion changes the rule and permits postage meter imprints to be used to prove the date of filing.

## II. Practice of Missouri Administrative Agencies

This result is contrary to key principles of Missouri administrative law. The main administrative tribunal, the Administrative

Hearing Commission, has accepted as proof of mailing only *registered* mail since 1980. See § 621.205 RSMo 1986. In 1991, the General Assembly changed the law to allow *certified* mail also. S.B. 283, Vernon's Mo. Legis. Service 580, 581 (1991) (restoring the pre–1980 requirement altered by the original enactment of § 621.205).

Even a postmark does not qualify to prove date of filing at the Administrative Hearing Commission. *See, e.g., Evergreen Lawn Service, Inc. v. Director of Revenue,* 685 S.W.2d 829 (Mo. banc 1985) (deadline for filing in person is thirtieth day; if office is closed that day, deadline is next day that the office is open); *Springfield Park Central Hospital v. Director of Revenue,* 643 S.W.2d 599 (Mo.1983) (filing by regular mail does not extend deadline by three days; pleading must be received in office by thirtieth day); *City of St. Louis v. Director of Revenue,* 654 S.W.2d 118 (Mo. App.1983) (filing by express mail must be received in office by thirtieth day); *Cardinal Glennon Memorial Hospital Coffee Shop v. Director of Revenue,* 624 S.W.2d 115 (Mo.App.1981) (filing by mail received on the thirty-second day because the office was closed on the thirtieth day was late).

Several other statutes require that materials are deemed filed with a state agency when received *unless* sent by registered or certified mail. A declaration of candidacy for elected office must be filed in person with two exceptions for registered or certified mail. § 115.355 RSMo 1986. Pleadings with the State Tax Commission are deemed filed at the time of mailing only if sent by registered or certified mail. § 138.433 RSMo 1986.

Several tax statutes deem documents filed as of the date postmarked on the envelope or other container in which the documents are sent. *See* § 142.140 RSMo 1986 (filing of monthly report by distributors—gas tax); § 142.517 RSMo 1986 (filing of monthly report by licensees—diesel tax); § 143.851 RSMo 1986 (filing of all documents related to income tax); *cf.* § 130.046 RSMo Supp.1990 (campaign finance reports). Neither appellant nor the principal opinion have cited any state agen-

cy that accepts the date stamped by a postal meter as the date of filing.

Missouri administrative law, thus, requires that some government official certify that a filing was either sent to or received by the agency in a timely fashion. True, the statute governing appeals to the Labor and Industrial Relations Commission, like the statutes for some other agencies, consider a simple postmark to be proof of timely filing, rather than requiring that the pleading be sent by certified or registered mail. This difference does not logically indicate a legislative intent to allow a party to self-certify the date of filing. The most logical reading of this difference is that an appeal may be filed at reduced cost with the LIRC by allowing a simple postmark to certify the date.

### III. Rules of Construction

The principal opinion notes the multiple "dictionary" meanings of the word "endorse" and proceeds to apply the rule of construction that remedial statutes are to be liberally construed. (Op. at 340). Rules of construction must be applied as a comprehensive whole rather than independent rules analyzing words out of context. In addition, the rule providing for liberal construction of remedial statutes and strict construction of penal statutes only applies when there are, at least, two plausible interpretations under the other rules of construction. *Cf. Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 404–05 (Mo. banc 1986) (rule of liberal construction inapplicable when language of statute is not ambiguous); *State ex rel. LeFevre v. Stubbs,* 642 S.W.2d 103, 106 (Mo. banc 1982) (rules of liberal construction apply to remedial statutes "provided such interpretation is *not inconsistent* with the language used ... resolving all reasonable doubts in favor of applicability of the statute to the particular case"); 2A Sutherland Stat. Const. § 58.05 (4th ed. 1984) (rules of strict or liberal construction have no application where the language of the statute is clear).

The main rule of construction is that a word in a statutory sentence, like a word in any other sentence, is read in the context

of that statute to determine its meaning.[1] In this case, the provision states that an appeal shall be deemed filed "as of the date endorsed by the United States Post Office on the envelope...." While "endorse" can mean either approving something or placing a stamp/signature on something, the remainder of the statute containing "endorsed" provides the context that determines its meaning.

In § 287.480, the sentence shows both *who* must endorse the date and *where* that endorsement goes. "[E]ndorsed" is the beginning of a phrase modifying date. A major assumption of English grammar is that adjectives and adverbs modify the term most closely preceding them. This assumption is stated as the "last clear antecedent" rule: "relative and qualifying words, phrases, or clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or including others more remote." *Rothschild v. State Tax Comm'n*, 762 S.W.2d 35, 37 (Mo. banc 1988).

The sentence structure clearly indicates that "on the envelope" is adverbial, modifies "endorse," and is not an adjective modifying the remote word "date." If the phrase "on the envelope" were an adjective, as the principal opinion construes it, "endorsed by the United States Post Office" would have to be set off by commas (*i.e.*, "date, endorsed by the United States Post Office, on the envelope"). Because there are no commas, "endorsed" cannot mean "approved" in § 287.480. Therefore, the liberal rule of construction cited by the principal opinion is irrelevant as the statute has a "plain meaning."

Despite the assertions of the principal opinion to the contrary, the language of § 287.480 is clear and unambiguous. As such, any change should come from the General Assembly and not from this Court.

## IV. Practical Problems with the Principal Opinion

The principal opinion relies upon postal regulations and postal duties. In the area of postal administrative regularity, Missouri courts have consistently refused to speculate on the regular flow of mail. *Hoelscher v. Sel–Mor Garment Co.*, 430 S.W.2d at 748. The principal opinion goes one step beyond, and takes judicial notice of intricate postal inspection matters.

The principal opinion's rule is a bonus to sophisticates who own postage meters and can affix the postage meter imprint but then not deposit the appeal until a later date. At the same time, the unsophisticated may deposit the appeal after 5:00 p.m. and receive a postmark days later. The principal opinion encourages sophisticated corner-cutting, but penalizes honest ignorance.

Even assuming a perfect world, the principal opinion ignores some crucial provisions of the Domestic Mail Manual (DMM). Under these provisions, a person with a postal meter can use the prior day's date if the letter or package is deposited in the mail before the first collection of the day. § 144.471(b) DMM. When metered mail is inspected, a postmark with the prior day's date is not "erroneous" if the letter is found in the first collection of the day. § 144.517 DMM.

Even if there were no cheating by the party with the postage meter, the principal opinion's rule still gives the parties owning them an advantage. The party who files by personal delivery has a deadline of, typically, 5 p.m. on the deadline date. The party who files by mail has a deadline of approximately the same time (depending upon when the time of the last mail pickup). The party who files by metered mail, however, is given a deadline of, at least, 11:59 p.m.

1. This rule is stated in many different ways: (1) as whole statute interpretation, 2A **Sutherland Stat. Const.** § 46.05 (4th ed. 1984) ("It is always an unsafe way of construing a statute ... to divide it by a process of etymological dissection, and to separate words and then apply to each, thus separated from its context, some particular definition given by lexicographers...."; (2) as the maxim of noscitur a sociis (or associated words), *id.* at § 47.16 ("the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases"); or (3) as the rule of common meaning, *id.* at § 47.28.

A French philosopher once said: "The law, in its majestic equality, forbids the rich as well the poor to sleep under bridges, to beg in the streets, and to steal bread." [2] In this case, according to the principal opinion, the law, in its majestic equality, allows the poor as well as the rich to use postal meters. The statute, however, intends that the working poor, and small-business owners, can inexpensively and effectively appeal to the LIRC. In the absence of clear legislative intent, the statute should not be interpreted to give an advantage to those who are wily and resourceful.

For these reasons, I dissent.

---

**2.** *Bartlett's Familiar Quotations* 802 (14th ed. 1968) (quotation from Anatole France).